UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

RON BOWERS,

                Plaintiff,

       v.

CITY OF HERRIN, ILLINOIS, an Illinois
municipal corporation, LYNN FRATTINI,
individually and in his official capacity as City
Code Inspector, City of Herrin, and CHAD
PARKS, individually and in his official capacity
as a City of Herrin Police Officer,

                Defendants.

Case No. 06-cv-4012-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion to dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(6) (Doc. 6) filed by defendants City of Herrin ("Herrin"), Lynn Frattini

("Frattini") and Chad Parks ("Parks") and on the motion to strike and dismiss (Doc. 7) filed by

Frattini and Parks.  Plaintiff Ron Bowers ("Bowers") has responded to the motions (Doc. 9).

**I.      Background**

The complaint in this case alleges that in May 2005, Parks, a Herrin police officer, irked

at Bowers for things he had said when Parks had arrested him the day before, turned Bowers in

to Frattini, Herrin's code inspector, because Bowers had four inoperable cars on his property.

Parks and Frattini knew that Bowers's cars comprised the inventory of his car restoration

business, but they were bent on enforcing Herrin's ordinances forbidding inoperable or

unregistered cars in public view, which Herrin deems a nuisance.  On May 18, 2005, Frattini

issued Bowers citations and impounded Bowers's four cars.  The private lot at which the cars

were stored refused to release the cars until Bowers settled matters with Herrin and paid a

storage fee of $20 per day per vehicle.  Bowers was able to gather the money to get one car released, but the three others remain impounded.

Bowers is suing the defendants under 42 U.S.C. § 1983 for violation of his Fourteenth Amendment procedural due process, substantive due process and equal protection rights.  His complaint names Frattini and Parks in their individual and official capacities.

**II.    Motion to Strike and Dismiss (Doc. 7)**

Frattini and Parks ask the Court to strike and dismiss Bowers's claims against them in their official capacities.  Bowers concedes that his § 1983 claims against those defendants in their official capacities are redundant because they duplicate his § 1983 claim against Herrin. They should therefore be stricken pursuant to Federal Rule of Civil Procedure 12(f), which provides that "the court may order stricken from any pleading any . . . redundant . . . matter." For this reason, the Court will strike Bowers's § 1983 claims against Frattini and Parks in their official capacities.

**III.    Motion to Dismiss (Doc. 6)**

In the pending motion to dismiss, the defendants challenge Bowers's pleading of a Fourteenth Amendment procedural due process claim.

A.    Standard for Dismissal

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations as true and draws all reasonable inferences in favor of the plaintiff.  *Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005);  *Holman v. Indiana*, 211 F.3d 399, 402 (7th Cir. 2000).  The Court should not grant a motion to dismiss unless it appears beyond doubt that the plaintiff cannot prove his claim under any set of facts consistent with the complaint.  *Brown*, 398 F.3d at 908-09;  *Holman*, 211 F.3d at 405.  "[I]f it is possible to hypothesize a set of facts, consistent with the complaint,

2

that would entitle the plaintiff to relief, dismissal under Rule 12(b)(6) is inappropriate." *Brown*, 398 F.3d at 909 (internal quotations omitted);  *see Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006).

     B.    <u>Analysis</u>

     Bowers has sufficiently pled a Fourteenth Amendment procedural due process violation. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. 14.  This clause encompasses three types of protection, one of which is the guarantee of fair procedure, often referred to as "procedural due process."  *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990).  The pending motion addresses Bowers's claim that he was not provided fair procedures when he was not given a pre-deprivation hearing before his vehicles were impounded.

     In order to plead a due process claim, a plaintiff must allege (1) that the interest allegedly lost was a protected property or liberty interest under the Fourteenth Amendment, (2) that "the alleged loss . . . amounted to a deprivation," and (3) that the deprivation was without due process of law.  *Polenz v. Parrott*, 883 F.2d 551, 555 (7th Cir. 1989) (citing *Parratt v. Taylor*, 451 U.S. 527, 536-37 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)). In this case, the defendants do not contest that Bowers was deprived, at a minimum, of a protected property interest in the possession of his cars.  *See Sutton v. City of Milwaukee*, 672 F.2d 644, 645 (7th Cir. 1982).  Thus, the critical question is whether he was provided due process of law in the procedures that were afforded him in conjunction with the deprivation.

     Due process "is flexible and calls for such procedural protections as the particular situation demands."  *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972);  *accord Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1996).  However, a "fundamental requirement of due

process is the opportunity to be heard at a meaningful time and in a meaningful manner."

*Doherty*, 75 F.3d at 323. The general rule is that absent an "extraordinary situation," a state

cannot seize property without *prior* notice and an opportunity to be heard, *United States v. Eight*

*Thousand Eight Hundred & Fifty Dollars ($8,850) in United States Currency*, 461 U.S. 555, 562

n. 12 (1983); *accord United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 62 (1993)

("Unless exigent circumstances are present, the Due Process Clause requires the Government to

afford notice and a meaningful opportunity to be heard before seizing real property."); *Miller v.*

*City of Chicago*, 774 F.2d 188 (7th Cir. 1985) ("[P]re-deprivation notice and hearing represent

the norm and the state must forward important reasons to justify a departure therefrom").

However, in certain circumstances a state may provide due process of law *after* the deprivation,

and even if a person is deprived of a protected liberty or property interest under color of state

law, there is no constitutional violation if the state provides an adequate post-deprivation

remedy. *Parratt*, 451 U.S. at 538; *Daniels*, 474 U.S. at 339-40 (Stevens, J., concurring).

Whether such a post-deprivation remedy is adequate requires a balancing of the interests

involved:

> First, the private interest that will be affected by the official action; second, the
> risk of an erroneous deprivation of such interest through the procedures used, and
> the probable value, if any, of additional or substitute procedural safeguards; and
> finally, the Government's interest, including the function involved and the fiscal
> and administrative burdens that the additional or substitute procedural
> requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). A complaint that lacks a colorable challenge to

the validity of state post-deprivation procedures has not alleged a constitutional violation.

*Daniels*, 474 U.S. at 339 (Stevens, J., concurring) ("[W]hen a pre-deprivation hearing is clearly

not feasible, when the regime of state tort law provides a constitutionally unobjectionable system

of recovery for the deprivation of property or liberty, and when there is no other challenge to the State's procedures, a valid § 1983 claim is not stated"; footnote omitted).

The defendants point to *Sutton v. City of Milwaukee*, 672 F.2d 644 (7th Cir. 1982), in support of their argument that due process does not require a pre-deprivation hearing before illegally parked cars can be towed. At issue in *Sutton* were laws that authorized towing of cars illegally parked on public streets without a prior hearing in non-emergency conditions, for example, where the car is not blocking traffic. *Id.* at 644-45. The Court of Appeals applied the *Mathews* balancing test and found that a pre-deprivation hearing was not necessary where adequate post-deprivation remedies existed. *Id.* at 645-46. Specifically, the Court found that the property interest at issue was slight since it involved only the temporary loss of the use of a vehicle that could be reclaimed simply by paying a $50 fee. *Id.* at 646. It further found that the benefits of a pre-deprivation hearing would be minimal. There was already an extremely low risk of erroneously towing cars because it was fairly simple to determine whether a car was parked illegally, and a pre-deprivation hearing was unlikely to be of much value in preventing any errors. *Id.* Finally, the Court found that the cost of offering pre-deprivation hearings was prohibitive because it would effectively remove towing from the municipality's arsenal of tools to combat and deter illegal parking. *Id.* This is because before notice and a hearing could be afforded, the car would be gone. *Id.* Balancing these factors of the *Mathews* test, the Court held that "that it is not a violation of the due process clause to tow an illegally parked car without first giving the owner notice and an opportunity to be heard with respect to the lawfulness of the tow." *Id.*

Bowers contends that *Sutton* is inapposite because the vehicles in this case are more akin to abandoned vehicles than to illegally parked vehicles. He points to *Graff v. Nicholl*, 370 F.

Supp. 974 (N.D. Ill. 1974), *cited with approval by Sutton*, 672 F.2d at 647, in which a three-judge District Court panel held that "due process requires that notice and an opportunity for a hearing be accorded to owners of abandoned vehicles prior to towing." *Id.* at 983.  The Court reasoned that in the case of abandoned vehicles, the potential of an individual's loss of such an important property right as his vehicle, even if only a temporary loss, requires a pre-deprivation hearing "unless exceptional circumstances justify postponement of the hearing until after the event." *Id.* at 981 (citing *Fuentes v. Shevin*, 407 U.S. 67, 81-82 (1972)).  The District Court further found that the municipality's interest in towing abandoned vehicles was not significantly harmed where the vehicles were not towed promptly, as was evidenced by the municipality's policy of allowing vehicle owners a reasonable time to move the vehicles before they would be towed.  *See id.* at 982, 984.

It is true that *Graff* was issued before *Mathews*, so it does not technically implement *Mathews's* three-factor test.  However, later courts have recognized that *Graff's* approach is consistent with the *Mathews* test.  *See Perry v. Village of Arlington Heights*, 905 F. Supp. 465, 468 (N.D. Ill. 1995).

Bowers argues that the first and the third inquiries in the *Mathews* test distinguish this case from *Sutton*.  With respect to the private interest affected by Herrin's towing without a pre-deprivation hearing, Bowers argues that the property interest is greater than the one at issue in *Sutton*.  For him, it consists not just of a few hours of the use of his car but of the inventory of his business.  Furthermore, unlike *Sutton* where the vehicle owner could retrieve his car for a flat $50 fee and drive away, Herrin's policy as alleged in the Complaint requires that all fines and storage fees on the cars be paid, and then the owner would have to arrange to have the inoperable cars towed to their ultimate destination.  Bowers argues that this has the potential to be a much

6

higher cost – and to result in a longer deprivation – than the short deprivations at issue in *Sutton*. Finally, Bowers suggests that the property interest is greater because it involves towing cars from private property, not public streets as in *Sutton*.

Bowers also argues that, unlike in *Sutton*, there is little danger that providing a pre-deprivation hearing before towing inoperable cars poses a prohibitive cost to Herrin's efforts to abate what it views as nuisances, a valid public interest. The time, effort and expense of a pre-deprivation hearing are likely to be minimal. Furthermore, a pre-deprivation hearing would not prevent Herrin from using towing as an enforcement mechanism. Inoperative vehicles, by their very definition, do not work and are therefore not likely to be moved very quickly, which was the factor in *Sutton* that rendered pre-deprivation hearings incompatible with towing. On the contrary, Herrin's ordinance provides for towing *seven days after issuance* of notice to the offender and only after the offender has failed to remove the vehicles on his own. This seven-day delay "strongly suggests that there is no overwhelming necessity for immediate action upon the expiration of this period." *Graff*, 370 F. Supp. at 982. Furthermore, because Herrin already contemplates a seven-day delay between notice and towing and offers the offender an opportunity to remedy the ordinance violation before his vehicles are towed, requiring a hearing in those seven days would not likely delay any action, diminish the effectiveness of towing as a method of enforcing and deterring violators of the nuisance ordinances, or harm the public in any significant way.

The Court finds that *Sutton* is distinguishable from the case at bar. The nature and importance of the private and governmental interests involved in each case are significantly different. Furthermore, based on the allegations in the complaint, it appears that pre-deprivation hearings are feasible and would not harm the governmental interest in any substantial way.

7

Therefore, the Court cannot say that *Sutton* provides the rule of law in this case or that Bowers is unable to prevail on his procedural due process claim

**IV.**     **Conclusion**

For the foregoing reasons, the Court **GRANTS** the defendants' motion to strike and dismiss (Doc. 7), **STRIKES** Bowers's § 1983 claims against Frattini and Parks in their official capacities, and **DENIES** the defendants' motion to dismiss (Doc. 6).

**IT IS SO ORDERED.**
**DATED:  November 1, 2006**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**